# United States Court of Appeals for the Federal Circuit

05-5052

JACOBS ENGINEERING GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Robert J. Symon, Spriggs & Hollingsworth, of Washington, DC, argued for plaintiff-appellant.

James W. Poirier, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director.

Appealed from: United States Court of Federal Claims

Judge George W. Miller

# United States Court of Appeals for the Federal Circuit

05-5052

JACOBS ENGINEERING GROUP, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  January 19, 2006

_____

Before MAYER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

A development and construction contract required the government to reimburse the contractor for 80 percent of its cost of performing the contract.  The contract's termination-for-the-convenience-of-the-government clause ("termination clause") required the government upon such termination to pay the contractor "[a]ll costs reimbursable" under the contract.  See 48 C.F.R. § 52.249-6(g); Jacobs Eng'g Group, Inc. v. United States, 63 Fed. Cl. 451, 455 (2005) (trial court decision).  The question is whether, when the government so terminated the contract, it was required to reimburse the contractor for all of the costs the contractor incurred up to that point or only for 80 percent of them.  Reversing the United States Court of Federal Claims, we hold that the contractor may recover all of its cost, rather than 80 percent.

The government entered into a contract with Jacobs Engineering Group, Inc. ("Jacobs")' predecessor (whose contract Jacobs took over when it acquired the predecessor) to develop, design, fabricate, construct, and install a gasification improvement facility. No fee was payable to the contractor, but the contract contained the following cost sharing provision covering the "total estimated cost for the work" of $28,750,375:

> Cost Sharing. The Contractor and the Government agree to share the cost of the effort for Phase I and Phase II as follows:

|  | Government (80%) | Contractor (20%) | Total (100%) |
|---|---|---|---|
| Phase I | $19,850,784 | $4,962,696 | $24,813,480 |
| Phase II | 3,149,515 | 787,379 | 3,936,894 |
| Total | $23,000,299 | $5,750,075* | $28,750,374 |

> *Includes foregone fee in the amount of $1,181,594 for Phase I and $169,531 for Phase II.

The contract further provided that if the contracting officer approved a cost overrun, the contractor's share would be 20 percent.

The contract also contained a standard termination for convenience clause, Federal Acquisition Regulation ("FAR") § 52.249-6 (May 1986), which authorized the government to "terminate performance of work [if] [t]he Contracting Officer determines that a termination is in the Government's interest." If that occurred, the government was required to pay the contractor "[a]ll costs reimbursable under this contract, not previously paid, for the performance of this contract before the effective date of the termination, and part of those costs that may continue for a reasonable time with the

approval of or as directed by the Contracting Officer." FAR § 52.249-6(g)(1) (May 1986).

The contract also authorized the contractor to discontinue the project after Phase I was completed unless it received what it deemed "adequate cost sharing and . . . an advanced patent waiver." If the contractor did so, it would "be liable for 20% of the costs incurred during the performance period."

During performance, the government terminated the contract for its convenience (because it did not have funds to complete performance). Jacobs submitted a termination settlement proposal which sought reimbursement of 100 percent of its costs, which the government rejected. The contracting officer then rejected Jacobs' claim for recovery of all of its costs, limiting recovery to 80 percent. Jacobs challenged that decision in the United States Court of Federal Claims.

On cross-motion for summary judgment, the court granted the government's motion and entered a judgment on its behalf. 63 Fed. Cl. at 459. The court stated:

> The termination clause does not invalidate the cost-sharing provision of the Contract. Rather, it clearly seeks to fashion a remedy for the contractor in conjunction with the cost-sharing provisions. Thus, only those costs that would be reimbursed under the Contract will be paid to the contractor in the event of a termination for convenience. Here 80 percent of Jacobs's costs were reimbursable under the cost-sharing provision and therefore, under the termination for convenience clause, Jacobs is entitled to only 80 percent of its costs not previously paid.

Id. At 457 (emphasis in original) (citations omitted).

II

The termination clause required the government, upon terminating the contract, to pay the contractor "[a]ll costs reimbursable under this contract." The government

contends, as the Court of Federal Claims held, that since the contract required it to reimburse the contractor for only 80 percent of the costs, its payment under the termination clause is limited to 80 percent of the costs. We conclude, however, that the term "all costs reimbursable" defines the type or kind of costs for which the contract provides reimbursement and not the amount of such costs.

The contract specifies a substantial number of costs that are reimbursable and some that are not. Reimbursable costs include "fabricated or unfabricated, parts, work in process, completed work, supplies, and other materials procured or acquired for the work terminated, . . . completed or partially completed plans, drawings, information, and other property that . . . would be required to be furnished to the Government, . . . and the jigs, dies, fixtures, and other special tools and tooling acquired or manufactured for this contract." FAR § 52.249-6(c)(6) (May 1986). They also include costs allowable under FAR § 31.2 (see FAR § 52.249-6(h) (May 2004)), such as labor relations costs (FAR § 31.205-21), plant protection costs (FAR § 31.205-29), and help-wanted advertising costs for jobs specific to the project (FAR § 31.205-34(a)(1)). On the other hand, entertainment costs (FAR § 31.205-14), fines and penalties (FAR § 31.205-15), and general help-wanted advertisement costs (FAR § 31.205-34(b)) are not reimbursable. The termination clause's reference to "all costs reimbursable" under the contract appears designed to incorporate the contract's division between reimbursable and non-reimbursable costs.

Throughout the contract, when the parties intended the 80 percent – 20 percent division of costs to cover particular situations, they explicitly so provided. The table shown above specified the amount of the costs for each phase of the contract that each

05-5052                                                    4

party would bear. If the contractor terminated performance after Phase I was completed, it would "be liable for 20% of the costs incurred during the performance period." If there was an approved cost overrun, the contractor was required to absorb 20 percent of it.

In these circumstances, it seems most unlikely that if the parties had intended the termination clause to limit the contractor to 80 percent of the termination costs, they would not have said so instead of providing that the government would pay "[a]ll costs reimbursable" under the contract. We cannot read the latter phrase covering "all" reimbursable costs to mean 80 percent of such costs. In any event, to the extent there is an ambiguity on the point, it must be resolved in favor of Jacobs, the non-drafter of the contract.

Our conclusion also accords with the basic financial situation underlying the contract. FAR § 16.303(b) states that "[a] cost-sharing contract may be used when the contractor agrees to absorb a portion of the costs, in the expectation of substantial compensating benefits." If the contract had been completely performed at an estimated cost of more than $28 million, the government's reimbursement of only 80 percent of that amount presumably would have resulted in a substantial loss to the contractor. Jacobs tells us in its brief that the reason the contractor entered into such a seemingly unattractive venture was the anticipation that as a result of its performance, it would obtain valuable patent rights, to which the contract referred.

As a result of the government's termination of the contract, Jacobs was denied the opportunity to obtain such patent rights. In these circumstances, it seems unfair to Jacobs to deny it full reimbursement for the costs of its performance up to the

government's contract termination, which thwarted its possibility of obtaining the patent rights. "A contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate. If he has actually incurred costs . . . , it is proper that he be reimbursed those costs when the Government terminates for convenience and thereby custs [sic] off his ability to amortize those costs completely." In re Kasler Elec. Co., DOTCAB 1425, 84-2 BCA ¶ 17374 (May 21, 1984).

## CONCLUSION

The judgment of the Court of Federal Claims is reversed and the case is remanded to that court to award damages.

REVERSED AND REMANDED.