ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Thorpe See-Op Corporation ) | ASBCA Nos. 58960, 58961 |
| ) | |
| Under Contract No. W911W6-05-C-0047 ) | |

APPEARANCE FOR THE APPELLANT:          Mr. Virgil Clark
                                                                     Vice President of Business Development

APPEARANCES FOR THE GOVERNMENT:     E. Michael Chiaparas, Esq.
                                                                     DCMA Chief Trial Attorney
                                                                   Stephen D. Sanders, Esq.
                                                                     Trial Attorney
                                                                     Defense Contract Management Agency
                                                                     Dallas, TX
                                                                   Douglas R. Jacobson, Esq.
                                                                     Trial Attorney
                                                                     Defense Contract Management Agency
                                                                     Bloomington, MN

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

### INTRODUCTION

The government contracted with appellant, Thorpe See-Op Corporation, to develop an unmanned aerial vehicle that could be launched from an aircraft using a rocket launcher. Subsequently, the government terminated the contract for convenience, and appellant submitted a termination for convenience settlement proposal. Subsequently, the government demanded repayment of a portion of the interim payments that it had already made. Appellant appeals from the government's payment demand, and from the denial of its request for further payment pursuant to its settlement proposal. Because the appeals address the same issues, we address these consolidated appeals together. We deny the appeals.[1]

---

[1] We previously denied government's motion to dismiss and cross-motions for summary judgment. *Thorpe See-Op Corporation*, ASBCA Nos. 58960, 58961, 15-1 BCA ¶ 35,833.

## FINDINGS OF FACT

On 24 January 2005, the Aviation Applied Technology Directorate (government) awarded Contract No. W911W6-05-C-0047, a cost-plus-fixed-fee contract for $500,000 (including a fixed fee of $23,810) to appellant "develop a sensor and weapons equipped software test [Wing Store Unmanned Aerial Vehicle]" (R4, tab 1, at 1, 3, 4). On 9 May 2005, the government increased the contract amount by $70,000 to $570,000 (including a $3,334 increase in the fee to $27,144) (R4, tab 8 at 27-28). The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002) (R4, tab 1 at 16), which provides:

> (a) *Invoicing.* (1) The Government will make payments to the Contractor when requested as work progresses....
>
> (2) Contract financing payments are not subject to the interest penalty provisions of the Prompt Payment Act. Interim payments made prior to the final payment under the contract are contract financing payments....
>
> ....
>
> (g) *Audit.* At any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited. Any payment may be—
>
> (1) Reduced by amounts found by the Contracting Officer not to constitute allowable costs or
>
> (2) Adjusted for prior overpayments or underpayments.

From 8 February 2005 through 3 May 2005, appellant submitted to the government seven vouchers for payment (Voucher Nos. 1-7) in amounts totaling $303,023.57 (R4, tab 110). The government subsequently paid that amount (tr. 1/20). The record also contains appellant's Voucher No. 8, which lists $38,060.12 in costs and $1,903.01 in fees for the period 2 May 2005 through 12 June 2005 (app. supp. R4, tab 3a). Supporting that voucher are purchase receipts for materials and tools, an invoice for services, as well as timecards for various personnel (*id.*).

On 13 June 2005, the government ordered appellant to stop work (tr. 2/118). On 29-30 June 2005, a government team inspected appellant's worksite and determined that appellant had performed only 15% of the contract work (R4, tab 10 at 34). The government team concluded that there had been "little data generated to support the claim for $326,964.18 of effort,"[2] that many of the items that appellant had shown to the government team had been generated after the government had ordered appellant to stop work, and that some of the appellant's work may have been associated with another contract, with the Department of the Navy (*id.*). On 22 August 2005, the contracting officer issued a unilateral modification terminating the contract for convenience pursuant to FAR clause 52.249-6, which the modification stated was read into the contract pursuant to *G.L. Christian & Associates v. United States*, 320 F.2d 345 (Ct. Cl. 1963) (R4, tab 12 at 40-41). The contracting officer's warrant recites his authority to perform "Duties as a Terminating Contracting Officer pursuant to FAR 42.302(a)(23)" (app. 4th supp. R4, tab 1).

FAR clause 52.249-6, TERMINATION (COST–REIMBURSEMENT) (MAY 2004), provides, in pertinent part:

> (h) If the Contractor and the Contracting Officer fail to agree in whole or in part on the amount of costs and/or fee to be paid because of the termination of work, the Contracting Officer shall determine, on the basis of information available, the amount, if any, due the Contractor, and shall pay that amount, which shall include the following:
>
> (1) All costs reimbursable under this contract, not previously paid, for the performance of this contract before the effective date of the termination, and those costs that may continue for a reasonable time with the approval of or as directed by the Contracting Officer; however, the Contractor shall discontinue these costs as rapidly as practicable.
>
> (2) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subparagraph (h)(1) of this clause.

---

[2] The source for the government team's $326,964.18 figure is not apparent. Voucher No. 8 lists a cumulative cost figure through 12 June 2005 of $326,654 (app. supp. R4, tab 3a at 1).

3

(3) The reasonable costs of settlement of the work terminated, including—

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory. If the termination is for default, no amounts for the preparation of the Contractor's termination settlement proposal may be included.

(4) A portion of the fee payable under the contract, determined as follows:

(i) If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract, but excluding subcontract effort included in subcontractors' termination proposals, less previous payments for fee.

....

(i) The cost principles and procedures in Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

In October 2006, appellant submitted a settlement proposal to the government (R4, tab 16 at 56). On 31 January 2007, the Defense Contract Audit Agency (DCAA), responding to a request to audit that proposal, determined that it had "significant concerns over the accuracy and reliability of [appellant's] books and records," and that "due to the repeated alteration of the books and records and poor internal controls exercised over them, it will be impossible for us to render an audit opinion on the total costs (direct costs or indirect rates) for this subject contract" (R4, tab 19 at 62). In May 2011, appellant presented two revised termination settlement proposals,

4

ultimately requesting $339,071.88 (R4, tabs 36, 37). On 1 July 2011, DCAA issued a report determining that appellant's settlement proposal was inadequate for audit (R4, tab 43). On 25 July 2011, appellant submitted a further revised termination settlement proposal, requesting payment of $359,963.14, consisting of $662,986.71 in costs, fees, and settlement expenses, minus $303,023.57 in payments already received (R4, tab 45 at 482). On 29 June 2012, DCAA issued a report determining that "the cost or pricing data and other than cost or pricing data submitted by [appellant] are not adequate," and that the proposal was not "an acceptable basis for negotiation of a fair and reasonable price" (R4, tab 72 at 544). DCAA questioned the entire proposed settlement amount, for lack of adequate supporting documentation or for unallowability (*id.* at 545-55).

By 15 October 2012, the parties had reached an impasse regarding the termination settlement proposal (R4, tab 80 at 638). On 15 July 2013, the government unilaterally issued Modification No. A00004, determining that appellant was entitled to a termination settlement amount of $106,900, consisting of (according to the modification) $81,424 in costs, $4,072 in fee, and $21,400 in settlement expenses) (R4, tab 98 at 676).[3] The contracting officer arrived at the cost and fee amounts by applying the 15%-contract completion determination of the government team that inspected appellant's worksite to the contract's total cost and total fee amounts, and arrived at the settlement expenses amount "[a]fter conferring with [the] DCAA Auditor" (*id.* at 679-80). The contracting officer further determined that the government had paid appellant $300,673.44, and that appellant owed the government the difference: $193,773 (*id.* at 676). Appellant filed a timely notice of appeal challenging that modification; we docketed that appeal as ASBCA No. 58960.

On 12 August 2013, appellant presented to the contracting officer a certified claim in the amount of $579,140.19, consisting of the following elements:

| | |
|---|---|
| Direct Material | $70,118.46 |
| Direct Labor | $133,171.01 |
| Indirect Factory Expense | $49,316.86 |
| General and Administrative Expense: | $111,224.93 |
| Total Cost | $363,831.26 |
| | |
| Fee | $27,260.36 |
| | |
| Settlement Expenses | $491,072.14 |
| | |
| Net Proposed Settlement | $882,163.76 |
| Prior Payments | ($303,023.57) |
| Net Payment Requested | $579,140.19 |

---

[3] $81,424 plus $4,072 plus $21,400 actually equals only $106,896.

(Supp. R4, tab 111) The contracting officer has not issued a final decision upon that claim. Appellant filed a notice of appeal challenging the deemed denial of the claim; we docketed that appeal as ASBCA No. 58961.

DECISION

Appellant must prove by a preponderance of the evidence that it is entitled to a greater termination settlement amount than that determined by the contracting officer. *See General Dynamics Land Systems, Inc.*, ASBCA No. 52283, 02-1 BCA ¶ 31,659 at 156,411. Because the contracting officer determined that appellant was entitled to a termination settlement amount of $106,900, appellant must prove that it is entitled to more than that amount, and, therefore, that it does not owe the government $193,773.

The parties agree that FAR clause 52.249-6, TERMINATION (COST-REIMBURSEMENT) (MAY 2004), governs their claims. *Thorpe See-Op*, 15-1 BCA ¶ 35,833 at 175,247. That clause provides for recovery of a settlement amount consisting of several elements, including reimbursable costs of pre-termination contract performance, the reasonable costs of settlement of the work terminated, and (if, as here, the contract is terminated for the convenience of the government) a percentage of the fee equal to the percentage of completion of work contemplated under the contract. FAR clause 52.249-6(h). In addition, the clause provides that "[t]he cost principles and procedures in Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause." FAR clause 52.249-6(i). FAR 31.201-1(b), Composition of total cost, provides that "[w]hile the total costs of a contract includes all costs properly allocable to the contract, the allowable costs to the Government are limited to those allocable costs which are allowable pursuant to [FAR] part 31." FAR 31.201-2(d), Determining allowability, provides that "[a] contractor is responsible for accounting for costs appropriately and for maintaining records, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, [and] are allocable to the contract." Furthermore, we agree with the government that FAR subpart 49.3, Additional Principles for Cost-Reimbursement Contracts Terminated for Convenience, applies to the termination for convenience of the cost-reimbursement contract at issue in this appeal, not, as appellant urges, FAR subpart 49.2, Additional Principles for Fixed-Price Contracts Terminated for Convenience. Appellant asserts that *Jacobs Engineering Group, Inc. v. United States*, 434 F.3d 1378 (Fed. Cir. 2006), "held that FAR 49.201 was applicable to cost-reimbursement contracts" (app. br. at 90), but we find no reference to that regulation in that opinion.

The government has paid appellant $303,023.57. In addition, the best evidence in the record of the percentage of the contract work that appellant completed is the report of the government's June 2005 trip to appellant's worksite. That report, which

6

we find a credible, contemporaneous account of the state of appellant's performance, indicates that appellant completed no more 15% of the contract work; therefore, we find that appellant is entitled to no more than $4,071.60 in fee (.15 times $27,144). We disagree with appellant (app. br. at 164) that labor hours is a better measure of contract completion. Furthermore, we reject appellant's contention (*id.*) that it is entitled to the entire fee because the government terminated the contract, a contention that runs afoul of FAR clause 52.249-6(h)(4)(i). Appellant is correct (*id.*) that, according to FAR 4.804-4(a)(2), physically completed contracts, a contract is considered to be "physically completed" when "[t]he Government has given the contractor a notice of complete contract termination." However, that means that the work of a terminated contract is at an end, not that a contractor whose contract has been terminated has completed 100% of "work contemplated under the contract." The latter is the measure under FAR clause 52.249-6(h)(4)(i), and even appellant does not contend that it performed to completion the work contemplated under the contract.

Finally, with the exception of one set of claimed costs – some of those listed in appellant's Voucher No. 8 – none of the claimed performance costs and settlement expenses is supported by record evidence of, in the language of FAR 31.201-2(d), "documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract"; consequently, appellant has not proven that it is entitled to any of those claimed costs or settlement expenses.[4] Appellant admits that it incurred a

---

[4] On 5 May 2015, the first day of the hearing, appellant requested that its "Exhibit 1," a box of documents that appellant represented contained evidence of contract costs, be admitted into evidence (tr. 1/100, 121). The government objected, contending that it had been given no notice of the existence of Exhibit 1, despite having requested such evidence in discovery (tr. 1/101-02). Appellant represented that it had located Exhibit 1 only the day before, that the government had not had an opportunity to inspect Exhibit 1, and that Exhibit 1 contained documents that the government had requested in discovery on 13 January 2015 (tr. 1/106, 109). The Board denied appellant's request for failure to comply with a 24 December 2014 Board order adopting the parties' jointly-proposed deadline to "close the record" (which the Board interprets to mean the close of the documentary record) by 6 March 2015 (tr. 1/100-01, 115, 121). (The parties' proposed schedule listed 6 March 2014 as the deadline to close the record, but the other deadlines proposed in that schedule – all in 2015 – indicate that the reference to 6 March 2014 is a typographical error). Appellant could not, later in the hearing, state with specificity whether Exhibit 1 contained contract-related payroll checks or bills for materials and supplies (tr. 2/165-68).

In addition, and relatedly, although a spreadsheet found in the record appears to be a contemporaneous record of contract costs created by appellant (app. 2nd

portion of the claimed costs during the period between the stop-work order and the termination of the contract, in an attempt to have the contract "reinstated" (app. br. at 123-24); however, appellant provides no authority for the allowability of such costs. With respect to Voucher No. 8, the purchase receipts, invoice, and timecards supporting that voucher are the type of documentation that would be "adequate to demonstrate that costs claimed have been incurred, [and] are allocable to the contract"; however, even if we were to credit appellant the entire Voucher No. 8 amount (and ignore that $1,903.01 of that amount is for fee) the amount to which appellant would be entitled would be only $44,034.73 ($39,963.13 plus $4,071.60). Subtracting $44,034.73 from $303,023.57 in government payments would result in $258,988.84 in government overpayment. Because the contracting officer claimed less than that amount ($193,773), we deny both appeals.

Appellant contends that the contracting officer did not possess authority to issue Modification No. A00004. We disagree. The contracting officer was warranted to perform "Duties as a Terminating Contracting Officer pursuant to FAR 42.302(a)(23)." FAR 42.302(a)(23), Contract administration functions, includes "[n]egotiate and execute contractual documents for settlement of partial and complete contract terminations for convenience as otherwise described by Part 49." FAR 49.105(a)(4), Duties of termination contracting officer after issuance of notice of termination, includes "[p]romptly settle the contractor's settlement proposal by determination for the elements that cannot be agreed on, if unable to negotiate a complete settlement." By Modification No. A00004, the contracting officer determined appellant's settlement proposal, upon which the parties were unable to negotiate a complete settlement; that is a determination expressly within his warranted authority as a termination contracting officer.

Citing FAR 49.303-1, Submission of settlement proposal, appellant contends that it is entitled to retain the $303,023.57 that the government paid pursuant to the seven vouchers that appellant submitted before the termination of the contract. Although FAR 49.303-1 provides that "[t]he contractor shall submit a final settlement proposal covering unvouchered costs," that does not mean that in the event of termination of a cost-reimbursement contract, a contractor is entitled to retain payments made by the government prior to termination. Pursuant to FAR clause 52.216-7(a)(1)-(2), "[t]he Government will make payments to the Contractor when requested as work progresses," and "[i]nterim payments made prior to the final payment under the contract are contract financing payments"; pursuant to FAR clause 52.216-7(g), "[a]t any time or times before final payment, the Contracting Officer may

_____

supp. R4, tab 14 at 7-11), we will not treat that spreadsheet as a summary under Federal Rule of Evidence 1006, because appellant did not make the source materials for that spreadsheet available to the government before the hearing. *See* WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 8045 (2000).

have the Contractor's invoices or vouchers and statements of costs audited." Furthermore, also pursuant to FAR clause 52.216-7(g)(1)-(2), "[a]ny payment may be...[r]educed by amounts found by the Contracting Officer not to constitute allowable costs; or...[a]djusted for prior overpayments or underpayments." That means that although a termination for convenience settlement proposal need only include unvouchered costs, the contracting officer may, prior to final payment pursuant to any settlement, audit vouchered costs already paid to determine the amount of final payment, and may reduce the amount of final payment by the amount of unallowable, vouchered costs already paid, as well as adjust any payment for prior overpayment. Therefore, a contractor whose cost-reimbursement contract is terminated for convenience is not, prior to final payment, necessarily entitled to retain payments by the government of vouchered costs.

We have considered and reject appellant's other arguments.

## CONCLUSION

The appeals are denied.

Dated: 3 February 2016

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58960, 58961, Appeals of Thorpe See-Op Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals