ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Zahra Rose Construction | )     ASBCA No. 62732 |
| | ) |
| Under Contract No. W91B4N-20-P-0015 | ) |

APPEARANCE FOR THE APPELLANT:    Ms. Zahra Noori
      CEO

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
      Army Chief Trial Attorney
      LTC Abraham Young, JA
      Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE SMITH

In this appeal, we resolve appellant Zahra Rose Construction's (Zahra) challenge to respondent Army's (the government) final decision regarding the termination for convenience after approximately two weeks of Zahra's two-month $30,000 contract to lease fuel trucks in Afghanistan. The contracting officer's final decision provided a $15,000 termination settlement under Federal Acquisition Regulation (FAR) 52.212-4(l) while Zahra claims that it is entitled to $30,400 because Zahra paid the owner of the trucks in advance for the full contract term in order to obtain the trucks. In response, the government disavows its $15,000 settlement decision and argues that Zahra is entitled to <u>no</u> settlement because the trucks did not meet the contract's technical requirements. Alternatively, the government argues that if Zahra is entitled to any termination settlement, it should be no more than $6,300 based upon a 12-day *pro-rata* calculation. For the reasons discussed below, we find that Zahra is entitled to a termination settlement of $28,800, which Zahra has sufficiently demonstrated it reasonably incurred prior to termination. We sustain the appeal in the amount of $28,800, but deny the appeal for the remainder of Zahra's claim.

## FINDINGS OF FACT

After a brief negotiation by email between September 2 and September 4, 2020 (app. supp. R4, tab 1 at 35, 40; tab 10; tab 16; tabs 27-29), Zahra's sole-source Contract No. W91B4N-20-P-0015 (the contract) was executed on September 4 by Zahra and on September 7 by the government (app. supp. R4, tab 2 at 52; R4, tab 2

at 1).[1]  The contract was 16-pages, commensurate with the cost and scope of a $30,000 lease of two fuel trucks (R4, tab 2 at 1, 3).  The contract quantity was "2" and the units were "months."  (*Id.* at 3)  The period of performance was also described as "04-SEP-2020 TO 31-OCT-2020" (*id.*) and "03 September 2020 to 31 October 2020" (R4, tab 2 at 14).  The pre-award price discussions were based on cost per truck per month (app. supp. R4, tabs 10, 27, 29).

In general, the contract required delivery of two 10,000-liter fuel trucks to Camp Antonik, Helmand Province, Afghanistan for use by the government (R4, tab 2 at 14-15; tab 19 at 9).  Zahra was responsible for maintenance or repair of the trucks as needed, and retrieval of the trucks at the conclusion of the contract (*id.* at 3, 15-16).

The contract contained a list of approximately 24 technical requirements for the trucks, some related to fuel delivery functions (fuel pump capacity, specific nozzles, etc.), while others were safety items (seat belts, rear view mirror, etc.) (*id.* at 15).

The contract was a commercial items procurement, and incorporated the 2018 version of FAR 52.212-4 "Contract Terms and Conditions--Commercial Items" (*id.* at 4; *see also id.* at 1).

FAR 52.212-4(a), INSPECTION/ACCEPTANCE, provided:

> "The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance.  The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. . . . *The Government must exercise its post-acceptance rights . . . within a reasonable time after the defect was discovered or should have been discovered . . . .*"

FAR 52.212-4(a) (emphasis added).

The contract's termination provision was FAR 52.212-4(l) and provided:

> "The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience . . . . [T]he Contractor shall be paid a percentage of the contract

---

[1] All pertinent events took place in 2020, so for brevity we refer to dates by month and day.

price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. . . . The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided."

FAR 52.212-4(l).[2]

On the day that Zahra executed the contract, September 4, Zahra paid $28,800 in cash to Great America Construction Co. (GACC) for both trucks for two months (R4, tab 6 at 3). Zahra has indicated that, because of the short lease term, GACC required full payment in advance in order to provide the trucks (R4, tab 5 at 1).

Zahra began the delivery process on September 4 but was delayed by formidable procedures for getting vehicles, especially those capable of holding large amounts of fuel, through the security screening of two contiguous military bases in the region of Afghanistan where much of the hostilities occurred throughout the U.S. involvement (R4, tab 3; app. supp. R4, tabs 18-26).

On September 7, after several days in separate Afghan Army and U.S. Army holding areas, Zahra provided the last bit of information needed to complete the delivery (R4, tab 3 at 1). The government's customer component (the U.S. Marine Corps) took possession of the trucks and inspected them on September 9 (R4, tab 4). A list of deficiencies was communicated internally within the government on the same day (*id.*), but there is no record that the list, or any concern about the functionality of the trucks, or any written acceptance or rejection of the trucks, was communicated to Zahra. Nor did the government terminate the contract for cause, or promptly invoke the inspection/acceptance provisions of the contract to reject the trucks, or seek to have Zahra remedy the deficiencies, all of which are actions contemplated by the contract for nonconforming items (R4, tab 2 at 4, 14-15; FAR 52.212-4(a)).

Based upon the fact that the trucks changed locations several times during the delivery process, coupled with the results of the government inspection and the two pictures of the trucks in the record (app. supp. R4, tab 15), we find that the trucks were generally operational albeit with the noted deficiencies.

---

[2] The contract also contained an "Acceptance Inspection" clause similar to FAR 52.212-4(a) (R4, tab 2 at 14). The contract also had a "General" clause similar to FAR 52.212-4(l) that provided that the "Government reserves the right to turn in any vehicles deemed unnecessary at any time without penalty." (R4, tab 2 at 15).

After September 9, there was a gap of approximately 13 days, until September 22, where the trucks' location and use is not contemporaneously reflected anywhere in the record and has not been directly addressed by either party since then (R4, Index; app. supp. R4, Index). In fact, there is no evidence of any communication at all between the parties between September 9 and 22. (*Id.*)

On September 22, and still without any mention of the inspection or deficiencies, the government emailed Zahra that "[t]his contract is being terminated for convenience of the Government. You will be able to submit a settlement proposal. At this time the vehicles provided are no longer needed please pick up the vehicles as soon as possible." (App. supp. R4, tab 3 at 1) As of September 22, no contract payment had been made or requested.

The same day it received the notice of termination, Zahra sent its termination proposal for $30,400, based upon the already-paid cost of $28,800 for obtaining the trucks from GACC and for a future cost of $1,600 for "pick up by ZR" (R4, tab 6 at 2; *see also* R4, Index; app. supp. R4, Index). A termination memo dated September 19 but signed and sent to Zahra on September 25 indicated that the contract was terminated for convenience because the customer "chose to go a different route" (R4, tab 8).

The government's direct response to Zahra's September 22 settlement proposal was an October 15 termination settlement offer, which indicated that "[t]he Government will accept $15,000 to cover the first full month of the contract" (R4, tab 15 at 2). A contract modification effective September 19, 2020, but signed by the contracting officer on November 4, changed the performance period to "two (2) weeks" and changed the contract value to $15,000 (R4, tab 9 at 2). The modification was intended to be bilateral, and was signed by the contracting officer, but was never signed by Zahra. (*Id.*)

After additional communications with Zahra, the same offer of $15,000 was issued as a final decision on November 21 (R4, tab 18). Zahra declined the settlement again and submitted its notice of appeal to the Board on November 23. Zahra's $30,400 claim in this appeal is the same as its September 22 settlement proposal (R4, tab 6).

Meanwhile, despite the notice to retrieve the trucks on September 22, they were not removed until December 22, 92 days later (R4, tab 19). The delay was caused by a confluence of procedural and security requirements, increased Taliban dominance in Helmand province, cumbersome communications and language barriers between the parties, government personnel turnover as the U.S. was withdrawing from Afghanistan, mechanical problems with the trucks, and Zahra's difficulties navigating all of the above (*see, e.g.* R4, tab 19; app. supp. R4, tabs 5-7, 11-14).

4

There is sufficient documentary evidence (a stamped signed receipt dated September 4 (R4, tab 6 at 3)) to find that Zahra actually paid GACC $28,800 for two months at the inception of the contract. But Zahra's claim for the additional $1,600 for "pick up by ZR" or "other amounts to drivers" is unsupported (R4, tab 6 at 2; app. resp.to gov't answer dtd. December 29, 2020 at 7). Zahra also makes a reference to an additional $15,000 payment to GACC for November and December, but there is no evidence in support (app. resp. to gov't answer dtd. December 29, 2020 at 7). Zahra also alleges that the government actually used the trucks for fueling operations prior to September 22 and simply ended the contract when the trucks were no longer needed (*id.* at 2). We do not have sufficient evidence to find that as a fact, but our resolution here provides Zahra with an appropriate settlement under FAR 52.212-4(l) whether or not the government used the trucks for their intended purpose.

DECISION

The parties have elected a written disposition under Board Rule 11 and have submitted briefs. Both parties submitted appeal files with documents they consider relevant. Although Zahra is proceeding without counsel, and its arguments are informal, we have considered the positions and information expressed in Zahra's Rule 11 brief as well as Zahra's contemporaneous communications with the government.[3]

Zahra is Entitled to Recover its Incurred Costs Under FAR 52.212-4(l)

FAR 52.212-4(l) provides for a termination settlement based upon (1) a percentage of work complete plus (2) "reasonable charges . . . result[ing] from the termination." Zahra's claim does not rely upon percentage of work complete, so our focus here is on the second of these two "prongs."

Regarding "reasonable charges . . . result[ing] from the termination," that phrase may appear to limit recovery to costs that accrued *after* the notice of termination, but they are not so limited. *SWR Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223. As we explained in *SWR Inc.*, recoverable costs can include startup costs because "[t]he overall purpose of a termination for convenience settlement is to fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work. *Nicon, Inc.* v. *United States*, . . . 331 F .3d 878, 885 (Fed. Cir. 2003)." *Id.* "A contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the

---

[3] "This Board has always accorded *pro se* litigants leeway administratively, but the legal standards we apply must, of necessity, be the same for everyone." *Atl. Maint. Co.*, ASBCA No. 40454, 96-2 BCA ¶ 28,472 at 142,195.

Government's decision to terminate." *Jacobs Eng'g Grp., Inc. v. United States,* 434 F.3d 1378, 1381 (Fed. Cir. 2006) (quoting *Kasler Elec. Co.,* DOT CAB No. 1425, 84-2 BCA ¶ 17,374 at 86,566.

Further, the second prong of FAR 52.212-4(l) provides for the "recovery of those charges incurred that 'do not relate to work completed' but should be reimbursed to fairly compensate the contractor whose contract has been terminated." *SWR Inc.,* 15-1 BCA ¶ 35,832 at 175,223. Where percentage of completed work (the first prong) does not fairly compensate the contractor for termination of the contract, the second prong is available to ensure that the contractor receives reimbursement of reasonable costs incurred in preparation for performance. *Id.*

The government suggests without support that Zahra should have avoided some of its costs by returning the trucks early (gov't br. at 17-18). Avoidance of additional cost is indeed a duty of a terminated contractor under the second prong of FAR 52.212-4(l), but there is no evidence that Zahra could have done so while there *is* proof that the government delayed its termination notice and that getting the trucks on and off the base was unusually difficult.[4] So the government's mitigation argument, such that it is, is unpersuasive.

As a result, under the second prong of FAR 52.212(l), Zahra is entitled to more than the Government's suggestions of $15,000 for one month, or $6,300 for 12 days, neither of which account for Zahra's actual payment of $28,800. Instead, the second prong of FAR 52.212(l) dictates that Zahra is entitled to recover its incurred costs of $28,800.

Because FAR 52.212-4(l) provides for recovery under the percentage of work prong "plus" incurred costs under the second prong, it appears mathematically possible for a terminated contractor to recover more than the total contract value if the circumstances fit. And Zahra does claim more than the total $30,000 contract value, so we note that the circumstances here do not entitle Zahra to a recovery of $58,800 ($30,000 under the first prong and $28,800 under the second). First, Zahra could not credibly argue that it completed 100% of the work where its contract was terminated less than 25% into the contract term. Second, the early termination relieved Zahra of any maintenance or repair obligations and costs – or any effort to fix the deficiencies found in the government's inspection. Last, Zahra's incurred costs are almost entirely redundant of any percentage of work argument Zahra might make. Per *SWR Inc.,*

_____

[4] The government acknowledged some responsibility for Zahra's delay retrieving the trucks (app. supp. R4, tab 14 at 3). Combined with the deteriorating security conditions in Afghanistan and the formidable entry/exit requirements at Camp Antonik, it is not clear that Zahra could have returned the trucks early, much less that GACC would have given Zahra a partial refund.

FAR 52.212-4(l) fairly compensates a terminated contactor, but it clearly is not meant to provide a windfall double-recovery.

### The Government's Defenses Are Unavailing

The government's primary position in this appeal focuses upon the first prong of FAR 52.212-4(l), not the second, arguing that Zahra is entitled to no termination settlement at all because the trucks were purportedly non-conforming, thus zero percent of the work was performed (gov't br. at 2, 15-17). This question is *non sequitur* because the second prong of FAR 52.212-4(l) does not relate to percentage of work at all. And further, costs to produce non-complying goods can still be recoverable anyway. *New York Shipbuilding Co.,* ASBCA No. 15443, 73-1 BCA ¶ 9852 at 46,018-19 ("[W]here a contract is terminated for convenience of the Government, the contractor is entitled to recover its reasonable, allocable, and allowable costs incurred with respect to termination inventory even if such inventory did not comply in all respects with specification requirements"). *See also Caskel Forge, Inc.,* ASBCA No. 7638, 1962 BCA ¶ 3318 at 17,108; *Best Lumber Sales,* ASBCA No. 16737, 72-2 BCA ¶ 9661 at 45,098; *Riverport Industries, Inc.,* ASBCA No. 30888, 87-2 BCA ¶ 19,876 at 100,521; *Youngstrand Surveying,* AGBCA No. 90-150-1, 92-2 BCA ¶ 25,017 at 124,694.

The government's heavy reliance upon *Green Bay Logistic Servs. Co.*, ASBCA No. 61063, 18-1 BCA ¶ 37,031, where we denied a termination settlement in part because the leased trucks at issue were non-conforming, is misplaced. In *Green Bay*, the government complied with FAR 52.212-4(a) and timely rejected the non-conforming trucks -- before they were even delivered. *Id.* at 180,305. In contrast, here there was no rejection of Zahra's trucks, no discussion of the deficiencies, and no invocation or compliance with FAR 52-212-4(a). Although our review of this dispute is *de novo*, [5] and the government is not bound by its $15,000 settlement offer, opposing Zahra's claim before the Board does not give the government an opportunity to remedy its non-compliance with FAR 52.212-4(a) or to entirely revise its decision to terminate the contract for convenience. As it recognized several times contemporaneously, by terminating the contract for convenience "under the authority of [FAR] 52.212-4(l)" (R4, tab 9 at 1; *see also* R4, tab 18), the government became responsible for a termination settlement regardless of the uncommunicated deficiencies in the trucks.

Last, the government suggests that any payment above its unilaterally revised performance period of 12 days would be a "penalty" from which it is absolved by the

---

[5] *Naseem Al-Oula Company*, ASBCA Nos. 61321 *et al*., 20-1 BCA ¶ 37,490 at 182,149 (citing *Lebolo-Watts Constructors 01 JV, LLC*, ASBCA Nos. 59738, 59909, 19-1 BCA ¶ 37,301 at 181,453; 41 U.S.C. § 7103(e)).

contract's "general" clause (R4, tab 2 at 15). But compliance with FAR 52.212-4(l), including payment of costs under the termination clause, is not a penalty. It is the government's legal obligation when terminating a contract for convenience, so the contract's "general" clause is inapplicable.

CONCLUSION

Zahra's appeal is sustained in the amount of $28,800.

Dated: April 13, 2022

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62732, Appeal of Zahra Rose Construction, rendered in conformance with the Board's Charter.

Dated: April 13, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals